## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA
## PITTSBURGH DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| J.T. and Son Construction, LLC, | ) | Case No. 23-21623 |
| | ) | Chapter 11 |
| Debtor. | ) | |

### DECLARATION OF DANIELLE ORMBERG

I, Danielle Ormberg, under penalty of perjury, declare as follows:

1.      I am over the age of eighteen (18) years old.

2.      I have both personal knowledge and knowledge based on documents which I have reviewed regarding the matters set forth herein. If called to testify, I would testify as set forth herein.

3.      I am Litigation and Recovery Manager at Channel Partners Capital, LLC ("Channel").

4.      I am responsible for the administration, supervision, and collection aspects of certain accounts, including the account that is the subject of this bankruptcy proceeding.

5.      I am familiar with Channel's business custom and practices relating to the retention and maintenance of its records. I have custody and control of the business records of Channel and am familiar with the manner in which those records are compiled. Furthermore, the documents that I refer to below are kept in my custody and control.

6.      With respect to Channel's electronic records, Channel has developed a procedure for entering data into its computers with built-in safeguards to ensure accuracy and identify errors. The computers that Channel's personnel use to enter data are reliable and kept in a good state of repair. With respect to any electronic records discussed in this Declaration, I obtained a computer

1

**EXHIBIT A**

readout with the data, used the proper procedures to obtain the readout, and the computer from which I obtained the readout was in working order at the time I obtained the readout. I recognize all the exhibits that are electronic records, because I am familiar with Channel's computer programs in which such information is entered and stored.

7.      In preparation of this Declaration, I have reviewed Channel's documents, records, and files, including credit files, relating to J.T. and Son Construction, LLC (the "Debtor") and John Mnark.

8.      Channel's records are made in the ordinary course of Channel's business by persons who have a business duty to make such records. The records are made at or near the time of the occurrence of the event of which they are a record, or from information transmitted by a person with knowledge of that record. With respect to the documents referenced in this Declaration, it is Channel's business custom and practice to place all such contracts in a file relating to that particular transaction. When Channel generates a document or receives a document (i.e., correspondence, or an electronic or hard copy of a document), it is Channel's custom and practice to place a copy of that document in the file to which it relates at the time it receives the document. Every time Channel receives a payment, the payment is recorded in Channel's records via a computer software program, which is operated on a computer system.

a.      **Equipment Finance Agreement.**

9.      On or about November 8, 2021, Channel, as lender, and the Debtor, as borrower, entered into Master Equipment Finance Agreement No. xx061 and Schedule xx82-1M thereto (collectively the "Equipment Finance Agreement") wherein Channel financed the Debtor's acquisition of the following equipment: one (1) 2021 Snap Table PRO Hyperlite Cutting Table, Serial No. 1S9U1UR15MC216049; and one (1) 2017 Manac Combo Flatbed Trailer, Vin No.

5MC124816H168520 (collectively the "First Collateral"). <u>See</u> Equipment Finance Agreement attached hereto as Exhibit 1.

10.     Pursuant to the Equipment Finance Agreement, the Debtor agreed to make forty-eight (48) consecutive monthly payments of $1,314.95, plus applicable taxes. <u>See</u> Equipment Finance Agreement attached hereto as Exhibit 1.

11.     Pursuant to the Equipment Finance Agreement, Channel obtained a first priority security interest in the First Collateral. <u>See</u> Equipment Finance Agreement, ¶ 11, attached hereto as Exhibit 1.

12.     Channel properly perfected its first priority security interest in the First Collateral by timely filing its UCC-1 financing statement and recording its lien on the certificate of title for the trailer. <u>See</u> UCC-1 Financing Statement and Electronic Title Copy attached hereto as Exhibit 2.

13.     The Debtor defaulted under the Equipment Finance Agreement by failing to make all necessary payments when due.

14.     As a result of the default under the Equipment Finance Agreement, Channel is entitled to payment of the accelerated balance remaining of $33,898.89, exclusive of interest and attorneys' fees and costs. <u>See</u> Equipment Finance Agreement, ¶ 12, attached hereto as Exhibit 1, and Statement of Account attached hereto as Exhibit 3.

15.     The Equipment Finance Agreement provides that, upon the occurrence of an event of default, Channel may take possession of and remove the First Collateral. <u>See</u> Equipment Finance Agreement, ¶ 12, attached hereto as Exhibit 1.

16. Channel has not had an opportunity to inspect its First Collateral. Based on a desktop valuation, Channel estimates the value of the First Collateral at $25,000.00, depending on condition and mode of sale.

17. Channel does not know if the First Collateral is insured or otherwise secured.

18. The First Collateral continues to depreciate, thereby diminishing Channel's interest in the First Collateral. Channel's interest in the First Collateral is not adequately protected.

**b.** **Business Loan Agreement.**

19. On June 8, 2022, Channel, as secured party, and Debtor, as customer, entered into Business Loan and Security Agreement No. xx81-1M (the "Business Loan Agreement") for the principal amount of $100,000.00. See Business Loan Agreement attached hereto as Exhibit 4.

20. Pursuant to the Business Loan Agreement, the Debtor granted Channel a security interest in all of the Debtor's "personal property assets, including, but not limited to, business equipment, inventory, accounts, accounts receivable, intellectual property, chattel paper, instruments, deposit accounts, commercial tort claims, contract rights, licenses, claims, general intangibles and any other assets and properties of any kind whatsoever, whether now owned or hereafter acquired, wherever located, together with all proceeds, including insurance proceeds (the "Second Collateral"). Channel Partners perfected its first-priority security interest in its collateral by filing a UCC-1 financing statement. See Business Loan Agreement, ¶ 3, attached hereto as Exhibit 4, and UCC-1 Financing Statement attached hereto as Exhibit 2.

21. Pursuant to the Business Loan Agreement, the Debtor agreed to make fifteen (15) consecutive monthly payments in the amount of $8,533.33. See Business Loan Agreement, Section II, attached hereto as Exhibit 4.

22.     The Debtor defaulted under the Business Loan Agreement by failing to make all necessary payments when due.

23.     As a result of the default under the Business Loan Agreement, Channel is entitled to payment of the accelerated balance remaining of $62,927.06, exclusive of interest and attorneys' fees and costs.  See Business Loan Agreement, ¶ 5, attached hereto as Exhibit 4, and Statement of Account attached hereto as Exhibit 5.

24.     The value of Channel's Second Collateral is unknown.

25.     Channel has performed all of its obligations under the Equipment Finance Agreement and Business Loan Agreement.

26.     The value of the First Collateral and Second Collateral  (collectively the "Collateral") is substantially less than the amount due Channel.  As such, the Debtor has no equity in the Collateral.

27.     Channel's interest in the Collateral is not adequately protected.

28.     All exhibits attached hereto are true and correct copies of the originals.

29.     If called to testify in this matter, I would competently testify to the above.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _27ᵗʰ_ of _September_ , 2023.

Danielle Ormberg
Litigation and Recovery Manager
Channel Partners Capital, LLC

5

**CHANNEL PARTNERS**
*Equipment Finance*

*Master Equipment Finance Agreement*

Master Equipment Finance Agreement No. ███████061

| CUSTOMER: Please verify this section and complete any missing information | | |
|---|---|---|
| Customer Full Legal Name: JT & Son Construction, LLC | | |
| Street Address: 131 POWELL RD | | |
| City: NEW BRIGHTON | State: PA | Zip Code: 15066 |
| Business Phone: 7245060153 | Email: Jt@tandson.net | |

**INSTRUCTIONS:** The words "You", "Your" and "Customer" refer to the customer (the party who is borrowing funds against the Equipment or as a direct loan); "We", "Us", "Our" and "Secured Party" refer to Channel Partners Capital, LLC d/b/a Channel Partners Equipment Finance, and its successors and assigns, the secured party. Please complete and/or verify information and sign or authenticate where noted. Please call with any questions.

**1. MASTER EQUIPMENT FINANCE AGREEMENT & SCHEDULES:** You have requested that we finance the purchase price of the goods ("Equipment") and, if applicable, finance certain software and/or software license(s) ("Licensed Software"), software components, including but not limited to, software maintenance and/or support ("Products") and/or implementation, integration, training, technical consulting and/or professional services in connection with software ("Services") (collectively, the "Financed Items," which are included in the word "Equipment" unless separately stated) from software licensor(s) and/or Supplier(s) (collectively, the "Supplier"), all as described in a related Equipment Finance Agreement Schedule ("Schedule"). Each Schedule shall constitute a separate agreement distinct from this Master Equipment Finance Agreement ("Master EFA") and is subject to all of the terms and conditions contained herein. This Master EFA shall constitute a separate agreement distinct from each Schedule and is subject to all of the terms and conditions of each Schedule. In the event of a conflict between this Master EFA and a Schedule, the provisions of the Schedule (and any Addendum thereto) shall prevail. The term "EFA" when used herein means collectively, each Schedule and this Master EFA. Capitalized terms used and not otherwise defined herein shall have the same meanings given in a Schedule. The term of this Master EFA begins on the first Schedule's "Commencement Date" (as provided in each Schedule) and continues as long as any Schedule remains unpaid. The Commencement Date with respect to each Schedule is the date on which such Schedule shall commence, which date is the date on which We in our sole discretion have provided Our acceptance of such Schedule. You authorize Us to insert or correct information on the EFA including Your proper legal name, address, dates and Equipment description. All notices shall be in writing addressed to You at Your address stated herein or to Us at 11100 Wayzata Boulevard, Suite 305, Minnetonka, Minnesota 55305.

**2. EQUIPMENT:** You have chosen the Equipment as set forth on each Schedule as applicable. You represent and warrant that the Equipment is financed and that you will use the Equipment for commercial or business purposes only and not for personal, family, agricultural or household purposes. If the Equipment is unsatisfactory, You agree that your only remedy is against the Supplier or manufacturer and You have no remedy for damages against Us. The occurrence of the earlier of: (i) Your confirmation to Us by phone, (ii) Your execution of the Delivery & Acceptance of Equipment on the Schedule, (iii) the lapse of fifteen (15) days after delivery of the Equipment to You if You have not given written notice to Us of Your non-acceptance of the Equipment prior to the lapse of such fifteen-day period or (iv) the lapse of fifteen (15) days after delivery of the Equipment to You if You have given written notice to Us of Your non-acceptance of the Equipment and failed to return the Equipment to the Supplier prior to the lapse of such fifteen (15) day period shall: (a) in each case constitute Your acknowledgement that You have inspected the Equipment, found it satisfactory in all respects and have irrevocably accepted it "as is", "where is" and without recourse, representation or warranty of any kind express or implied and (b) be a condition precedent for the occurrence of the Commencement Date. You will maintain Equipment location records and provide Equipment location to Us upon demand. You are responsible, at Your expense, for keeping the Equipment in good repair, condition and working order, except for normal wear and tear. You will keep the Equipment free and clear of all liens and claims. You are responsible for complying with all laws relating to the Equipment or its use and to protect the Equipment from damage, seizure or loss. You will continue to make payments if any damage, seizure or loss occurs to any part of the Equipment, provided that if the Equipment is completely destroyed, seized or lost You shall pay Us the Default Amount described in the Default and Remedies section of the EFA on the next payment date. We are not responsible for any losses, damages or injuries caused by the installation or use of the Equipment or from any other loss while You indemnify Us and Our affiliates and Our and Our affiliates' shareholders, directors, officers, employees, agents and assignees against any claims, actions, damages, fines, penalties, causes of action, suits or other legal proceedings or liabilities including all attorneys' fees, arising out of or connected with the EFA or any Equipment (collectively, "Claims"), except for Claims arising out of or related to Our gross negligence, willful misconduct or fraud. Such indemnification shall survive expiration, cancellation or termination of the EFA.

**3. WARRANTY DISCLAIMERS: WE ARE FINANCING EQUIPMENT FOR YOU "AS IS" "WHERE IS" AND WITH ANY AND ALL FAULTS. YOU AGREE THAT YOU HAVE SELECTED THE SUPPLIER AND EACH ITEM OF EQUIPMENT ON EACH SCHEDULE BASED UPON YOUR OWN JUDGMENT AND YOU DISCLAIM ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY US. AS WE DID NOT SELECT, MANUFACTURE, SUPPLY OR INSPECT THE EQUIPMENT, WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, OF, AND TAKE ABSOLUTELY NO RESPONSIBILITY FOR, MERCHANTABILITY, FITNESS FOR ANY PARTICULAR PURPOSE, CONDITION, QUALITY, ADEQUACY, TITLE, DATA ACCURACY, SYSTEM INTEGRATION, FUNCTION, DEFECTS, INFRINGEMENT OR ANY OTHER ISSUE IN REGARD TO THE EQUIPMENT, ANY ASSOCIATED SOFTWARE AND ANY FINANCED ITEMS. WE ARE NOT RESPONSIBLE FOR PACKAGING, DELIVERY, INSTALLATION OR TESTING OF THE EQUIPMENT. THE SUPPLIER IS NOT AN AGENT OF OURS AND NOTHING THE SUPPLIER STATES CAN AFFECT YOUR OBLIGATION UNDER THIS AGREEMENT. YOU WILL CONTINUE TO MAKE ALL PAYMENTS UNDER THE EFA REGARDLESS OF ANY CLAIM OR COMPLAINT AGAINST ANY SUPPLIER. SO LONG AS YOU ARE NOT IN DEFAULT UNDER THIS AGREEMENT, WE ASSIGN TO YOU ANY WARRANTIES IN THE EQUIPMENT GIVEN TO US.**

**4. REPRESENTATIONS:** You represent and warrant to Us that: You, and each of the individuals signing or authenticating the EFA, have the lawful power and authority to enter into the EFA; by entering into the EFA You will not violate any law or other agreement; and the location of Your chief executive office, state of incorporation or organization, exact legal name, place of residence and Federal Tax ID number have been provided to Us. The EFA will constitute Your legal, valid and binding obligation, enforceable against You in accordance with the terms hereof. If a registered organization, You represent and warrant to Us that You are duly organized, duly authorized, validly existing and in good standing. **THE EFA CANNOT BE TERMINATED OR CANCELED BY YOU FOR ANY REASON.** Your obligation to make payments under the EFA is absolute and unconditional.

**5. ASSIGNMENT: YOU HAVE NO RIGHT TO SELL, TRANSFER, ASSIGN, ENCUMBER, PLEDGE OR LEASE THE EQUIPMENT OR YOUR RIGHTS UNDER THE EFA, EXCEPT TO THE EXTENT WE PROVIDE OUR PRIOR WRITTEN CONSENT (NOT TO BE UNREASONABLY WITHHELD).** You understand that We, without prior notice, have the right to assign, sell or otherwise transfer the EFA without notice to You. You understand that Our assignee will have the same rights and benefits as Us. You agree that the rights of Our assignee will not be subject to any claims, defenses or setoff that You may have against Us. You shall not consolidate or merge with or into any other entity, distribute, sell or dispose of all or any substantial portion of your assets other than in the ordinary course of business, without our prior written consent, and the surviving or successor entity or the transferee of such assets, as the case may be, shall assume all of your obligations under this EFA by a written instrument acceptable to us. No event shall occur which causes or results in a transfer of majority ownership of you while any obligations are outstanding hereunder. This EFA shall be binding on and inure to the benefit of the parties hereto and their respective successors and assigns.

**6. LAW: THIS EFA IS GOVERNED BY, INTERPRETED, CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF MINNESOTA OR IF THIS EFA IS ASSIGNED, THE LAWS OF THE ASSIGNEE'S PRINCIPAL PLACE OF BUSINESS, WITHOUT REGARD TO THE CONFLICT-OF-LAWS PRINCIPLES THEREOF. FOR PURPOSES OF ANY ACTION OR PROCEEDING INVOLVING THIS EFA, YOU HEREBY EXPRESSLY SUBMIT TO THE EXCLUSIVE JURISDICTION OF ANY FEDERAL OR STATE COURT IN THE STATE OF MINNESOTA OR THE ASSIGNEE'S PRINCIPAL PLACE OF BUSINESS, AT THE SOLE ELECTION OF US OR THE ASSIGNEE. YOU HEREBY CONSENT TO THE JURISDICTION AND VENUE OF SUCH COURT SELECTED BY US OR THE ASSIGNEE. THE PARTIES IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY. YOU WAIVE THE DEFENSE OF AN INCONVENIENT FORUM TO THE MAINTENANCE OF ANY SUCH ACTION OR PROCEEDING.** The EFA is intended to constitute a valid and enforceable legal instrument. If any provision of this EFA is declared unenforceable, the other provisions herein shall remain in full force and effect to the fullest extent permitted by law. The EFA constitutes the entire agreement between the parties. Each party prefers that any dispute between them be resolved subject to the above jury trial waiver. Should the above jury trial waiver be found unenforceable, then, upon the written request of any party, any dispute, including any and all questions of law or fact relating thereto, shall be determined exclusively by a judicial reference proceeding in accordance with Cal. Civ. Proc. Code § 638 et seq. or the applicable state's equivalent state law. Notwithstanding the foregoing, nothing in this paragraph shall limit any other right of the parties under the EFA.

**7. INSURANCE** During the term of each Schedule, You shall obtain and maintain, at Your own expense property damage insurance against all loss or damage to the Equipment, including, without limitation, loss by fire, theft and such other risks of loss as are customarily insured against on the Equipment, in amounts acceptable to Us, naming Us as lender's loss payee ("Physical Damage Insurance"). If requested by Us, you shall also obtain and maintain, at Your own expense, liability insurance in amounts acceptable to Us, naming Us as additional insured. In each case, such insurance shall be with such carriers and in such policy forms acceptable to Us. All policies must provide that We be given thirty (30) days' written notice of any material change or cancellation. You agree to provide Us with certificates or other evidence of insurance acceptable to Us. If You do not provide Us with evidence of acceptable Physical Damage Insurance, We have the right, but not the obligation, to obtain Physical Damage Insurance covering Our interest in the Equipment for the term of each Schedule. You agree to cooperate with Us, Our insurer and Our agent in the placement of coverage and with claims. Any Physical Damage Insurance We obtain will not insure You against third-party or liability claims and may be cancelled by Us at any time. In the event We obtain the above-described Physical Damage Insurance, You will be required to pay Us an additional amount each month for the insurance premium and an administrative fee. You agree that We, Our affiliates, and Our Agents may make a profit in connection with the Physical Damage Insurance We obtain. The cost may be more than the cost of obtaining Your own Physical Damage Insurance. If You later provide Us with evidence that You have obtained acceptable Physical Damage Insurance, We will cancel the Physical Damage Insurance We obtained. The Physical Damage Insurance We obtain (1) will not name You as an insured, additional insured, or loss payee; (2) will not provide You with liability or third party property damage insurance; (3) may not pay any claim that You make; (4) will not pay any claim made against You; and (5) may be cancelled by Us at any time. We may negotiate and settle for Our benefit all Physical Damage

COPY

**EXHIBIT**
**1**

1

This is a copy view of the Authoritative Copy held

Insurance claims and all liability insurance claims involving Us or the Equipment and may sign or endorse Your name on any draft, check or instrument representing insurance proceeds covering the Equipment. We shall retain any Physical Damage Insurance proceeds up to the full amount owed under the EFA. You will remain responsible for any deficiency.

**8. PAYMENTS, INTERIM PAYMENT, FEES & OTHER CHARGES:** You agree and promise to pay the periodic payments for the term (including any extensions) of the EFA in accordance with each Schedule (hereinafter "Payment") plus any applicable sales tax, use tax or property tax and all other amounts described herein that are to be paid to Us under the EFA. The Payment and amount of the Invoices (as set forth on each Schedule) may be adjusted proportionately upward or downward: (i) by up to 10% to accommodate changes in the Equipment cost; (ii) if the shipping charges differ from the estimate given to You; or (iii) if a down payment or deposit is deducted. You agree that all payments to be paid to Us under the EFA shall be made by automated clearing house (ACH). You agree to execute the necessary authorization in order to allow Us to receive payment by ACH. You agree to reimburse Us for all fees, charges and penalties We may incur as the result of Your bank rejecting any ACH debits or credits due to insufficient funds or as the result of the bank account You provided to us in the Authorization for Pre-Authorized Payments (or otherwise) (the "Authorized Account") not being properly configured for ACH transactions. We have the right to apply all sums received from You to any amounts due Us pursuant to the EFA. You agree to pay us a fee for filing, searching and/or titling costs required under the Uniform Commercial Code ("UCC") or other laws. You agree to pay us an origination fee for all closing costs. Your signature or other authentication is an irrevocable offer to enter into the EFA. In the event that You sign or otherwise authenticate the EFA, but the EFA is not commenced, any advance payments or origination fee may be retained by Us to compensate for Our documentation, processing and other expenses. If any part of a Payment due in accordance with a Schedule is more than 3 days late, you agree to pay a late charge of 10% of the Payment which is late or, if less, the maximum charge allowed by law. Interest on any past due amount may be charged from the due date until paid at the highest legal rate. If for any reason your check is returned for insufficient funds, you will pay us a service charge of $35 or, if less, the maximum charge allowed by law. You agree to pay Us an "Interim Payment" in an amount equal to 1/30th of the monthly payment, multiplied by the number of days from the Commencement Date to the first regular payment due date as selected by You. The Interim Payment is in addition to the sum of the regular monthly payments You are obligated to pay for the term of the EFA.

**9. TAXES:** You shall pay when due all sales, use, excise, personal property, stamp, documentary and ad valorem taxes, license and registration fees, assessments, fines, penalties, freight, transportation and similar charges imposed on the ownership, possession, licensing, operation or use of the Equipment during the term of the EFA. At Our option, We may discharge taxes, liens or other encumbrances at any time levied or placed on the Equipment and may pay for the maintenance and preservation of the Equipment. If We make payment on any of the above, You agree to reimburse Us.

**10. EQUIPMENT OWNERSHIP:** You are the owner of the Equipment, excluding any Licensed Software, under each Schedule as applicable and have title to the Equipment subject to Our lien. You agree that as to Licensed Software only: We have not had, do not have, nor will have any title to such software; You have executed or will execute or otherwise authenticate a separate software license agreement; and We are not a party to and have no responsibilities whatsoever in regard to such license agreement. In the event the Equipment is transferred, you are solely responsible for removing any data that may reside in the Equipment, including but not limited to hard drives, disk drives or any other form of memory. We have the right to inspect the Equipment at any time during Your regular business hours upon two (2) business days' prior written notice (provided that such notice period shall not apply upon the occurrence and continuance of a Default).

**11. UCC FILINGS:** To secure Your obligations under the EFA, You hereby grant Us a first priority security interest in the Equipment set forth in each Schedule. You authorize Us and any assignee to file UCC Financing Statements or similar instruments in Our Name or that of Our secured party representative to perfect such interest. The term "Equipment" includes all replacements, parts, repairs, additions, accessions and accessories incorporated in the Equipment or affixed to the Equipment and any and all proceeds of the foregoing, including, without limitation, insurance proceeds.

**12. DEFAULT & REMEDIES:** You will be in default if: (i) You do not pay any Payment or other sum due to Us or You fail to perform in accordance with the covenants, terms and conditions of the EFA, including any addendums, or any other agreement with Us or any of our affiliates or fail to perform or pay under any material agreement with any other entity; (ii) You make or have made any false statement or misrepresentation to Us; (iii) You or any guarantor dies, dissolves, liquidates, terminates existence or is in bankruptcy; (iv) You or any guarantor suffers a material adverse change in its financial, business or operating condition; (v) any guarantor defaults under any guaranty for this EFA; or (vi) You attempt to repudiate or revoke any agreement with Us ("Default"). If You are ever in Default, We, with or without notice to You, may initiate, and You hereby authorize Us to initiate, ACH debit entries at any time to the Authorized Account for all past due amounts (inclusive of any late payment charges, NSF fees and other amounts you are obligated to pay us under the EFA). In addition, if You are ever in default, at Our option, We can cancel the EFA and require that You pay the unpaid balance of the EFA, including any future Payments to the end of term, discounted to present value at 4%. We may recover default interest on any unpaid amount at the rate of 18% per year. Concurrently and cumulatively, We may also use any remedies available to Us under the UCC and any other law, including, but not limited to: (a) cause the termination of the Financed Items and You irrevocably consent to such termination of the Financed Items by Supplier; (b) require You to immediately stop using the Financed Items; (c) enter the Equipment location and repossess and remove, or render unusable, the Equipment; (d) require You to make the Equipment available to Us at a location determined by Us. If We take possession of the Equipment, You agree to pay the costs of repossession, moving, storage, repair and sale. The net proceeds of the sale of any Equipment will be credited against what You owe Us under the EFA and you will be responsible for any deficiency. In the event of any dispute or enforcement of Our rights under this EFA or any related agreement, You agree to pay Our reasonable attorneys' fees (including any incurred before or at trial, on appeal or in any other proceeding), actual court costs and any other collection costs, including any collection agency fee. Any delay or failure to enforce Our rights under this EFA will not prevent Us from enforcing any rights at a later time. You agree that Your rights and remedies are governed exclusively by the EFA. If interest is charged or collected in excess of the maximum lawful rate, We will refund such excess to You, which will be Your sole remedy. **YOU AGREE THAT WE SHALL NOT BE LIABLE TO PAY YOU ANY CONSEQUENTIAL, INDIRECT OR INCIDENTAL DAMAGES FOR ANY DEFAULT, ACT OR OMISSION BY ANYONE.**

**13. MISCELLANEOUS:** No modification to the EFA as supplied by Us to You shall be effective unless agreed to in writing or other authentication. The parties agree that: (i) this EFA and any Schedules, Addenda and other related documents hereto may be authenticated by electronic means; (ii) the "original" of the EFA shall be the copy that bears your manual, facsimile, scanned or electronic signature and that also bears our manually or electronically signed signature and is held or controlled by us; and (iii) to the extent the EFA constitutes chattel paper (as defined by the UCC), a security interest may only be created in the original. You agree not to raise as a defense to the enforcement of this EFA or any related documents that you or we executed or authenticated such documents by electronic or digital means or that you used facsimile or other electronic means to transmit your signature on such documents. A fax or copy version of Your signature on the EFA when received by Us shall be binding on You for all purposes as if originally signed. The EFA shall only become binding against Us when actually signed or otherwise authenticated by Us. If a printed version of the EFA is used, both You and We agree that the only version of the EFA that shall constitute the original authoritative version for all purposes is the version containing Our original signature and Your original, fax, copy or electronically affixed signature. If an electronic version of the EFA is used, both You and We agree that the only version of the EFA that shall constitute the sole authoritative version for all purposes is the version which has been authenticated by You and Us in accordance with applicable law and controlled by the "owner" pursuant to the rules and regulations of DocuSign; provided that if the "Paper Out" process shall have occurred pursuant to the DocuSign product Reference Guide, and there shall simultaneously exist both the "Paper Out" printed version and an electronic version of the EFA, then the "Paper Out" printed version of the EFA as identified in the DocuSign audit record and corresponding affidavit shall constitute the sole authoritative version for all purposes. Both You and We hereby agree that the EFA may be authenticated by each party by electronic means, and expressly consent to the use of an electronic version of the EFA to embody the entire agreement and the understanding between You and Us. You wish to continue to receive information at Your email addresses. The EFA may be executed in any number of counterparts, and all such counterparts, taken together, shall constitute one and the same instrument. Reference herein to "DocuSign" shall mean DocuSign, Inc., San Francisco, CA, or any successor electronic custodian appointed by Us. From time to time, a Supplier may extend to us payment terms for Equipment financed under this EFA that are more favorable than what has been quoted to you or the general public, and we may provide the Supplier information regarding this EFA if the Supplier has assigned or referred it to us. All notices shall be mailed or delivered by email or overnight courier to the respective parties at the addresses shown on this Master EFA or such other address as a party may provide in writing from time to time. By providing us with a telephone number for a cellular phone or other wireless device, including a number that you later convert to a cellular number, you are expressly consenting to receiving communications, including but not limited to prerecorded or artificial voice message calls, text messages, and calls made by an automatic telephone dialing system, from us and our affiliates and agents at that number. This express consent applies to each such telephone number that you provide to us now or in the future and permits such calls for non-marketing purposes. Calls and messages may incur access fees from your cellular provider. You agree that any call between You and Us or Our agents and employees may be recorded or monitored. You authorize us to make non-material amendments (including completing and conforming the description of the Equipment) on any document in connection with this EFA. Unless stated otherwise herein, all other modifications to this EFA must be in writing and signed by each party or in a duly authenticated electronic record. This EFA may not be modified by course of performance.

---

BY SIGNING BELOW OR AUTHENTICATING AN ELECTRONIC RECORD HEREOF, YOU CERTIFY THAT YOU HAVE REVIEWED AND DO AGREE TO ALL TERMS AND CONDITIONS OF THE EFA ON THIS PAGE AND ON PAGE 1 HEREOF.

*Customer Acceptance:*

JT & Son Construction, LLC

| Authorized Representative | Title | Date |
|---|---|---|
| DocuSigned by: [signature] B053DE26AC924A5... | Owner | 11/5/2021 \| 10:07:09 CDT |

*Secured Party Acceptance*

Channel Partners Capital, LLC d/b/a Channel Partners Equipment Finance

| Authorized Representative | Title | Date |
|---|---|---|
| DocuSigned by: Jill Fleck 0EE54F2E3E79453... | VP of Administration | 11/8/2021 \| 14:52:50 CST |

2

This is a copy view of the Authoritative Copy held
by the designated custodian

# CHANNEL PARTNERS
### Equipment Finance

*Master Equipment Finance Agreement Guaranty*

Master Equipment Finance Agreement No.
████061

**CONTINUING PERSONAL GUARANTY:** As consideration for Our entering into the EFA, the undersigned Guarantor(s) ("You", "Your"), jointly and severally, unconditionally personally guarantees and agrees to be liable to Us, Channel Partners Equipment Finance, the Secured Party, for the full, prompt and indefeasible payment and performance of all now existing and future indebtedness, obligations or liabilities of the Customer arising under the EFA. We may make changes to the EFA, including compromise or settlement, with the Customer, and you waive any abatement, setoff, defense or counterclaim for any reason and all notice of any changes or default. If the Customer defaults, You will immediately pay in accordance with the default provision of the EFA all sums due under the terms of the EFA and will perform all of the Customer's obligations under the EFA. It is not necessary for us to proceed first against the Customer or any collateral before enforcing this Guaranty. You certify that the financial information you have given us is true, complete and accurate in all material respects. You authorize us to obtain credit bureau reports for credit and collection purposes and to share them with our affiliates and agents. You will not transfer your obligations under this Guaranty or all or substantially all your assets to anyone without our prior written consent. This Guaranty will be binding on your estate, heirs, successors and assigns. We may assign this Guaranty without notice. If it is necessary for Us to proceed legally to enforce this guaranty, You expressly consent to the jurisdiction of the court set out in the 'Law' paragraph above and agree to pay all costs, including attorneys' fees incurred in enforcement of this guaranty (including attorneys' fees incurred post-judgment). You also agree that the "Law" paragraph above in its entirety applies to this guaranty. All financial providers are hereby directed and authorized to release to Us any and all information pertaining to any of Your accounts.

**Signature or authentication of the Guarantor (an Individual)**

DocuSigned by:

John Mnark

B053DE26AC924A5...

11/5/2021 | 10:07:09 CDT

| PERSONAL GUARANTOR NAME | SIGNATURE (AS AN INDIVIDUAL) | HOME ADDRESS | DATED |

PLEASE UPLOAD A DRIVER'S LICENSE (OPTIONAL)

COPY VIEW

3

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian



*Equipment Finance Agreement Schedule*

| Master Equipment Finance Agreement No. | Equipment Finance Agreement Schedule No. |
|---|---|
| ███061 | ███82-1M |

This Equipment Finance Agreement Schedule ("Schedule") incorporates by reference the terms and conditions of the Master Equipment Finance Agreement ("Master EFA") and constitutes an agreement between you and us with respect to the Equipment referenced herein, separate and distinct from the Master EFA. We agree to provide financing to you for the Equipment described below on the terms set forth in this Schedule, together with the terms and conditions set forth in the Master EFA (collectively, the "EFA"). If any provision in this Schedule conflicts with a provision in the Master EFA, the provision in this Schedule shall control. **BY SIGNING BELOW OR AUTHENTICATING AN ELECTRONIC RECORD HEREOF, YOU CERTIFY THAT YOU HAVE REVIEWED AND DO AGREE TO ALL TERMS AND CONDITIONS OF THE MASTER EFA AND THIS SCHEDULE.**

**CUSTOMER: Please verify this section and complete any missing information**

Customer Full Legal Name: JT & Son Construction, LLC

Street Address: 131 POWELL RD

City: NEW BRIGHTON | State: PA | Zip Code: 15066

Business Phone: 7245060153 | Email: Jt@tandson.net

**EQUIPMENT DESCRIPTION:**

All personal property as set forth on the below together with all replacements, parts, repairs, additions, and accessions incorporated therein or attached thereto and any and all proceeds of the foregoing, including, without limitation, insurance recoveries, the "Equipment".

Supplier:
Swenson Steel Products Co., Inc.
PO Box 190 Keyes, CA 95328

Equipment:

| Qty. | Equipment Description | Make | Model | Year | Serial/Model Number | Address |
|---|---|---|---|---|---|---|
| 1 | Cutting Table | SnapTable | PRO Hyperlite | 2021 | 1S9U1UR15MC216049 | 131 POWELL RD NEW BRIGHTON , PA 15066 |

Supplier:
Tri-State Trailer Sales, Inc.
PO Box 3465 Pittsburgh, PA 15230

Equipment:

| Qty. | Equipment Description | Make | Model | Year | Serial/Model Number | Address |
|---|---|---|---|---|---|---|
| 1 | Trailer | Manac | Combo Flatbed | 2017 | 5MC124816H5168520 | 131 POWELL RD NEW BRIGHTON , PA 15066 |

You acknowledge that You are choosing to finance the purchase of this Equipment over time per the terms and conditions of this EFA rather than the cash price listed on the invoice(s).

**EFA TERMS and CONDITIONS:**

Your Monthly Payment is set forth below. This Schedule shall commence upon Our written acceptance or other authentication on the "Commencement Date" (provided below), the occurrence of which is described in the Master EFA. Upon the occurrence of the Commencement Date, **this shall become a noncancelable, irrevocable agreement; it cannot be cancelled or terminated.**

48 Payments of $1,314.95
of which
0 Advance Payment(s) of $1,314.95
due on or before the Commencement Date set forth below

Origination Fee: $199.00
Titling Fee: $200.00

Please select Your Payment Due Date:
Fifth (5th)
Fifteenth (15th)
Twenty-fifth (25th) X

of each month, as selected by You, beginning on the first payment date on or after the Commencement Date. You agree that you will pay the Interim Payment, as defined in the Master EFA, covering the period of time between the Commencement Date and the date selected for your Payment due date.

**ACCEPTANCE OF SCHEDULE**

Customer | Secured Party

JT & Son Construction, LLC
DocuSigned by:
B053DE26AC924A5...
Authorized Representative | Date
11/5/2021 | 10:07:09 CDT

Channel Partners Capital, LLC d/b/a Channel Partners Equipment Finance
DocuSigned by:
Jill Fleck
0EE54F2E3E79453...
Authorized Representative | Date
11/8/2021 | 14:52:50 CST

Commencement Date: 11/08/2021

1

DocuSign Envelope ID: 420A5D46-238B-4D7F-8F52-3F0915B313CB

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian


CHANNEL
PARTNERS
*Equipment Finance*

| Master Equipment Finance Agreement No. | Equipment Finance Agreement Schedule No. |
|---|---|
| ███061 | ██82-1M |

## PRE-FUNDING ACCEPTANCE AGREEMENT AND AUTHORIZATION TO COMMENCE

This PRE-FUNDING ACCEPTANCE AGREEMENT AND AUTHORIZATION TO COMMENCE is made as of 11/5/2021, by and between JT & Son Construction, LLC ("Customer"), and Channel Partners Capital, LLC d/b/a Channel Partners Equipment Finance ("Secured Party").

Reference is made to the Master Equipment Finance Agreement and Equipment Finance Agreement Schedule whose numbers are shown above between Customer and Secured Party (collectively referred to as the "EFA"), pursuant to which, at Customer's request, Secured Party has agreed to finance certain equipment and/or other property, all as more fully described in the EFA (the "Equipment") manufactured and/or distributed by supplier(s) (hereinafter the "Supplier") subject to the terms of the EFA (the "Financing").

Customer has requested that the Secured Party advance funds to the Supplier(s) prior to delivery of all or some of the Equipment. As adequate and valuable consideration for Secured Party and/or its Assignees to advance funds to the Supplier(s), the Customer acknowledges that the EFA is a non-cancelable agreement and unconditionally agrees to the following:

1.  For the Equipment that has been delivered, Customer represents and warrants that such Equipment has been received, installed and inspected and is fully operational and is unconditionally accepted as of the date hereof. Customer understands and agrees that, in the event Customer is not satisfied with any of the Equipment, Customer shall seek resolution only from persons or entities other than Secured Party, such as the Supplier, vendor, manufacturer, installer or carrier, and Customer shall not assert against Secured Party any claim or defense that Customer may have with respect to the Equipment, its delivery, non-delivery, installation, inadequacy or failure to operate satisfactorily.

2.  Customer agrees to accept any Equipment described on the EFA not delivered as of the date hereof, at the Supplier's location of business. Customer acknowledges full responsibility for loss or damage to the Equipment from the time of Customer's acceptance at Supplier's place of business. The undersigned agrees to settle all claims, defenses, set-offs and counterclaims it may have with the Supplier of the goods and Equipment directly with the Supplier and not against Secured Party. Customer warrants to Secured Party that the Equipment is merchantable and fit for the purpose for which it was selected. Customer makes this acceptance regardless of the working condition or installation of the Equipment.

3.  Customer hereby acknowledges that Secured Party is relying on Customer's execution of this Pre-Funding Acceptance Agreement and Authorization to Commence as a condition precedent to disbursing the proceeds of the EFA. Customer may contact Supplier for its warranty rights, if any. The warranties are not the Secured Party's responsibility.

4.  The EFA will commence and Customer will begin making payments to Secured Party, regardless of the actual date of delivery, just as if all of the Equipment had been accepted and delivered. Customer understands that failure by the Supplier to deliver any Equipment is the sole responsibility of Customer and payments to Secured Party will not be withheld for any reason.

5.  By signature below, the undersigned specifically authorizes and requests Secured Party to make payment to the Supplier(s) for all of the Equipment described in the EFA. Customer agrees that none of the Equipment has been or will be delivered, installed or accepted on a trial

6.  Customer's signature authorizes Secured Party to verify by phone with a representative of Customer the Equipment description, including serial numbers and the schedule of payments. The Acceptance and Authorization provided for herein supersedes any other delivery and acceptance authorization.

BY SIGNING BELOW OR AUTHENTICATING AN ELECTRONIC RECORD HEREOF, THE CUSTOMER CERTIFIES THAT IT HAS REVIEWED AND AGREES TO ALL TERMS OF THIS PRE-FUNDING ACCEPTANCE AGREEMENT AND AUTHORIZATION TO COMMENCE

**JT & Son Construction, LLC**

Signature of Authorized Representative: _____ B053DE26AC924A5...

Title: Owner

Date: 11/5/2021 | 10:07:09 CDT

COPY VIEW

1

DocuSign Envelope ID: 420A9D46-238B-4D7F-8FC2-3F9943B313CB

THIS IS A COPY
This is a Copy View of the Authoritative Copy held
by the designated custodian



CHANNEL PARTNERS
Equipment Finance

| Master Equipment Finance Agreement No. | Equipment Finance Agreement Schedule No. |
|---|---|
| ███061 | ███82-1M |

*Titled Equipment Addendum*

Pursuant to this Titled Equipment Addendum to the above-referenced Master Equipment Finance Agreement and Equipment Finance Agreement Schedule (collectively the "EFA") the Secured Party and Customer hereby agree to amend the EFA to add additional terms and conditions as set forth below.

Secured Party and Customer hereby agree to amend the above referenced Master EFA and Schedule to add additional terms and conditions as set forth below.

1. Customer will promptly execute and deliver to Secured Party such further documents, take such further action, and provide such information as Secured Party may request in order to carry out more effectively the intent and purpose of EFA.

2. Customer agrees that it will complete the physical titling of the Equipment as required by the state of Customer's residence and guarantee that Secured Party will receive the original title to the Equipment in a timely manner. Customer shall provide such title documentation to Secured Party within fifteen (15) days of Customer's receipt of such title documentation from the appropriate titling authority. Customer's failure to provide Secured Party with title documentation to Secured Party in a timely manner shall be deemed a default under the EFA, subject to remedies available to Secured Party pursuant to the EFA. Customer further agrees to pay a month to month unobtained titling fee to the Secured Party if the Secured Party has not received the correct title documents in its offices.

3. Customer will do whatever may be necessary to have a statement of the interest of Secured Party and any assignee of Secured Party in the Equipment noted on any certificate of title relating to the Equipment and will deliver said certificate to Secured Party. If Customer fails to perform or comply with any of its agreements, Secured Party may perform or comply with such agreements in its own name or in Customer's name as attorney-in-fact. Customer agrees to pay (or reimburse Secured Party for) the reasonable costs and expenses related to such performance or compliance.

4. Customer hereby grants to Secured Party a power of attorney in Customer's name, to apply for a certificate of title for any item of Equipment that is required to be titled under the laws of any jurisdiction where the Equipment is or may be used and to transfer title thereto upon an event of default by Customer under the EFA. Customer acknowledges that Secured Party may incur out-of-pocket costs and expenses in connection with the transactions contemplated by the EFA, and accordingly Customer agrees to pay (or reimburse Secured Party for) the reasonable costs and expenses related to (a) filing any financing, continuation or termination statements, (b) any title and lien searches with respect to this EFA and the Equipment, and (c) documentary stamp taxes relating to the EFA.

5. Secured Party agrees that in regard to the location of the Equipment, Customer must be responsible for maintaining records showing the location of each piece of Equipment. Customer will report this location to Secured Party upon written request by Secured Party. Failure to do so shall constitute a breach of the EFA, which default shall be governed by the terms and conditions specified in the EFA.

6. **THE APPLICATION FOR TITLE MUST INCLUDE THE FOLLOWING AS 1ST LIEN HOLDER:**

**CHANNEL PARTNERS EQUIPMENT FINANCE ISAOA**
**11100 WAYZATA BOULEVEARD, SUITE 305, MINNETONKA  MINNESOTA 55305**

By signing this Addendum, Customer acknowledges the above changes to the EFA and authorizes Secured Party to make such changes. In all other respects the terms and conditions of the EFA remain in full force and effect.

CAPITALIZED TERMS IN THIS DOCUMENT ARE DEFINED AS IN THE EFA, UNLESS SPECIFICALLY STATED OTHERWISE

| Customer | Secured Party |
|---|---|
| JT & Son Construction, LLC | Channel Partners Capital, LLC d/b/a Channel Partners Equipment Finance |
| DocuSigned by: *[signature]* B053DE26AC92AA5... | DocuSigned by: *Jill Fleck* 0EE54F2E3E79453... |
| 11/5/2021 \| 10:07:09 CDT | 11/8/2021 \| 14:52:50 CST |
| Authorized Representative          Date | Authorized Representative          Date |

COPY VIEW

# iLien Cover Page



Date Printed:  02/20/2023

Debtor:
JT & SON CONSTRUCTION, LLC
131 POWELL RD
NEW BRIGHTON, PA  15066

Loan Number:  ████81
loan num:
REF3:
REF4:
Ref5:
Ref6:
Ref7:
Law Firm Bill Code:

iLien File #:  ████8872
Order Confirmation #:  ████4957

UserID:  ████997
UserName:  LUCAS BARNES
Number of Collateral Pages Attached:  0

Transaction Type:  Original
Jurisdiction:  PA, Secretary of CommonWealth

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

Lien Solutions
Representation of filing

**This filing is Completed**
File Number : ████████6889
File Date  : 09-Feb-2023

**A. NAME & PHONE OF CONTACT AT FILER** (optional)
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

**B. E-MAIL CONTACT AT FILER** (optional)
uccfilingreturn@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Lien Solutions
P.O. Box 29071
Glendale, CA  91209-9071

91304957

PENN

File with: Secretary of CommonWealth, PA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. **DEBTOR'S NAME:** Provide only **one** Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| JT & SON CONSTRUCTION, LLC | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 131 POWELL RD | NEW BRIGHTON | PA | 15066 | USA |

2. **DEBTOR'S NAME:** Provide only **one** Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only **one** Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Channel Partners Capital | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 11100 Wayzata Blvd | Minnetonka | MN | 55305 | USA |

4. **COLLATERAL:** This financing statement covers the following collateral:
All assets of the Debtor now owned or hereafter acquired

5. Check **only** if applicable and check **only** one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check **only** if applicable and check **only** one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check **only** if applicable and check **only** one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):  ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
91304957

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282



# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 5MC124816H5168520 | 17 | MANA | [COMB]* | TRL | | |

| Weight | New/Used | Title Number | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| 9030 | [Used]* | 77680966 | 0 | PA | 01-20-2022 |

Vehicle Color

**Full Name of Owner(s)**
JT & SON CONTRUCTION LLC
131 POWELL RD
NEW BRIGHTON, PA 15066

**Liens(s)**
[Channel Partners Capital LLC
ISAOA
11100 Wayzata Blvd
Suite 305
Minnetonka, MN 55305]*

Lien Date: 01-19-2024
ELT Number: 45262678501
LTN: ███82-1M

\* Information has been supplied by the lienholder, not the state titling agency.

Document ID: 5TBEBWRMGD

## THIS IS NOT A TITLE

This is an official Premier eTitleLien® Report
generated by a customer of DDI Technology.



# Payment History

## JT & Son Construction, LLC

**EXHIBIT 3**

| | |
|---|---|
| Original Principal Balance | $42,979.00 |
| Original Receivable Balance | $63,118.00 |
| Remaining Receivable Balance | $35,504.05 |
| Less any applicable discount | -$1,605.16 |
| Subtotal: | $33,898.89 |
| Outstanding fees, if any | $ - |
| **Total Due:** | **$33,898.89** |

Date   8/4/2023

| Total Paid | Total Principal Paid | Total Interest Paid |
|---|---|---|
| 28,666.22 | 14,824.09 | 12,789.86 |

| Invoice # | Due Date | Invoice Date | Paid Date | Method | Reference | Amount Due | Amount Paid | Principal Paid | Interest Paid | Remaining Balance Due |
|---|---|---|---|---|---|---|---|---|---|---|
| 3792 | 11/8/2021 | 11/8/2021 | 11/9/2021 | ACH | 21110816534 | 200.00 | 200.00 | 0.00 | 0.00 | 62,918.00 |
| 3792 | 11/8/2021 | 11/8/2021 | 11/9/2021 | ACH | 21110816534 | 199.00 | 199.00 | 0.00 | 0.00 | 62,719.00 |
| 3135 | 11/25/2021 | 11/25/2021 | 11/26/2021 | ACH | 21112145072 | 1,314.95 | 1,314.95 | 899.58 | 415.37 | 61,404.05 |
| 7447 | 12/25/2021 | 12/26/2021 | 12/27/2021 | ACH | 21122315123 | 1,314.95 | 1,314.95 | 597.29 | 717.66 | 60,089.10 |
| 1447 | 1/25/2022 | 1/24/2022 | 1/25/2022 | ACH | 22012415474 | 167.04 | 157.04 | 0.00 | 0.00 | 59,932.06 |
| 1447 | 1/25/2022 | 1/24/2022 | 1/25/2022 | ACH | 22012415474 | 167.04 | 10.00 | 0.00 | 0.00 | 59,922.06 |
| 1447 | 1/25/2022 | 1/24/2022 | 1/25/2022 | ACH | 22012415474 | 167.04 | -10.00 | 0.00 | 0.00 | 59,932.06 |
| 1447 | 1/25/2022 | 1/24/2022 | 1/25/2022 | ACH | 22012415474 | 167.04 | -157.04 | 0.00 | 0.00 | 60,089.10 |
| 2440 | 1/25/2022 | 1/24/2022 | 1/25/2022 | ACH | 22012415474 | 1,314.95 | 1,314.95 | 583.90 | 731.05 | 58,774.15 |
| 7973 | 2/25/2022 | 2/24/2022 | 2/25/2022 | ACH | 22022415562 | 1,314.95 | 1,314.95 | 594.19 | 720.76 | 57,459.20 |
| 3742 | 3/25/2022 | 3/24/2022 | 3/25/2022 | ACH | 22032416362 | 1,314.95 | 1,314.95 | 673.40 | 641.55 | 56,144.25 |
| 0280 | 4/25/2022 | 4/24/2022 | 4/25/2022 | ACH | G- | 1,314.95 | 1,314.95 | 616.53 | 698.42 | 54,829.30 |
| 5039 | 5/25/2022 | 5/24/2022 | 5/25/2022 | ACH | G- | 1,314.95 | 1,314.95 | 649.57 | 665.38 | 53,514.35 |
| 2684 | 6/25/2022 | 6/26/2022 | 6/27/2022 | ACH | G- | 1,314.95 | 1,314.95 | 638.84 | 676.11 | 52,199.40 |
| 7530 | 7/25/2022 | 7/24/2022 | 7/25/2022 | ACH | G- | 1,314.95 | 1,314.95 | 671.55 | 643.40 | 50,884.45 |
| 3418 | 8/25/2022 | 8/24/2022 | 8/25/2022 | ACH | G- | 1,314.95 | 1,314.95 | 661.93 | 653.02 | 49,569.50 |
| 5636 | 9/25/2022 | 9/25/2022 | 9/26/2022 | ACH | G- | 1,314.95 | 1,314.95 | 673.60 | 641.35 | 48,254.55 |
| 4861 | 10/25/2022 | 10/24/2022 | 10/25/2022 | ACH | G- | 1,314.95 | 1,314.95 | 705.78 | 609.17 | 46,939.60 |
| 3430 | 11/25/2022 | 11/24/2022 | 11/25/2022 | ACH | G- | 1,314.95 | 1,314.95 | 697.91 | 617.04 | 45,624.65 |
| 0424 | 12/25/2022 | 12/25/2022 | 12/26/2022 | ACH | G- | 1,314.95 | 1,314.95 | 729.72 | 585.23 | 44,309.70 |
| 6922 | 1/25/2023 | 1/24/2023 | 1/25/2023 | ACH | G- | 1,314.95 | 1,314.95 | 723.07 | 591.88 | 42,994.75 |
| 6922 | 1/25/2023 | 1/24/2023 | 1/25/2023 | ACH | G- | 1,314.95 | -1,314.95 | -723.07 | -591.88 | 44,309.70 |
| 6922 | 1/25/2023 | 1/24/2023 | 1/30/2023 | ACH | G- | 1,314.95 | 1,314.95 | 723.07 | 591.88 | 42,994.75 |
| 6922 | 1/25/2023 | 1/24/2023 | 1/30/2023 | ACH | G- | 1,314.95 | -1,314.95 | -723.07 | -591.88 | 44,309.70 |
| 3788 | 1/28/2023 | 1/27/2023 | 1/30/2023 | ACH | G- | 25.00 | 25.00 | 0.00 | 0.00 | 44,284.70 |
| 3788 | 1/28/2023 | 1/27/2023 | 1/30/2023 | ACH | G- | 25.00 | -25.00 | 0.00 | 0.00 | 44,309.70 |
| 6922 | 1/25/2023 | 1/24/2023 | 2/2/2023 | ACH | G- | 1,314.95 | 1,314.95 | 723.07 | 591.88 | 42,994.75 |
| 6922 | 1/25/2023 | 1/24/2023 | 2/2/2023 | ACH | G- | 1,314.95 | -1,314.95 | -723.07 | -591.88 | 44,309.70 |
| 3788 | 1/28/2023 | 1/27/2023 | 2/2/2023 | ACH | G- | 25.00 | 25.00 | 0.00 | 0.00 | 44,284.70 |
| 3788 | 1/28/2023 | 1/27/2023 | 2/2/2023 | ACH | G- | 25.00 | -25.00 | 0.00 | 0.00 | 44,309.70 |
| 6922 | 1/25/2023 | 1/24/2023 | 2/21/2023 | ACH | G- | 1,314.95 | 1,314.95 | 723.07 | 591.88 | 42,994.75 |
| 6922 | 1/25/2023 | 1/24/2023 | 2/21/2023 | ACH | G- | 1,314.95 | -1,314.95 | -723.07 | -591.88 | 44,309.70 |
| 3788 | 1/28/2023 | 1/27/2023 | 2/21/2023 | ACH | G- | 25.00 | 25.00 | 0.00 | 0.00 | 44,284.70 |
| 3788 | 1/28/2023 | 1/27/2023 | 2/21/2023 | ACH | G- | 25.00 | -25.00 | 0.00 | 0.00 | 44,309.70 |
| 6922 | 1/25/2023 | 1/24/2023 | 2/28/2023 | ACH | G- | 1,314.95 | 1,314.95 | 723.07 | 591.88 | 42,994.75 |
| 0491 | 2/24/2023 | 2/23/2023 | 2/28/2023 | ACH | G- | 25.00 | 25.00 | 0.00 | 0.00 | 42,969.75 |
| 2272 | 2/25/2023 | 2/26/2023 | 2/28/2023 | ACH | G- | 1,314.95 | 1,314.95 | 735.81 | 579.14 | 41,654.80 |
| 2272 | 2/25/2023 | 2/26/2023 | 2/28/2023 | ACH | G- | 131.50 | 131.50 | 0.00 | 0.00 | 41,523.30 |
| 2022 | 3/25/2023 | 3/26/2023 | 3/27/2023 | ACH | G- | 1,314.95 | 1,314.95 | 803.57 | 511.38 | 40,208.35 |
| 3242 | 4/25/2023 | 4/24/2023 | 4/25/2023 | ACH | G- | 1,314.95 | 1,314.95 | 762.94 | 552.01 | 38,893.40 |
| 6128 | 5/25/2023 | 5/24/2023 | 5/30/2023 | ACH | G- | 1,314.95 | 1,314.95 | 793.76 | 521.19 | 37,578.45 |
| 6128 | 5/25/2023 | 5/24/2023 | 5/30/2023 | ACH | G- | 165.59 | 155.59 | 0.00 | 0.00 | 37,422.86 |
| 6128 | 5/25/2023 | 5/24/2023 | 5/30/2023 | ACH | G- | 165.59 | 10.00 | 0.00 | 0.00 | 37,412.86 |
| 9382 | 6/25/2023 | 6/25/2023 | 6/26/2023 | ACH | G- | 1,314.95 | 1,314.95 | 790.37 | 524.58 | 36,097.91 |
| 9382 | 6/25/2023 | 6/25/2023 | 6/26/2023 | ACH | G- | 165.59 | 155.59 | 0.00 | 0.00 | 35,942.32 |
| 9382 | 6/25/2023 | 6/25/2023 | 6/26/2023 | ACH | G- | 165.59 | 10.00 | 0.00 | 0.00 | 35,932.32 |
| 2179 | 7/25/2023 | 7/24/2023 | 7/25/2023 | ACH | G- | 1,314.95 | 1,314.95 | 820.78 | 494.17 | 34,617.37 |
| 2179 | 7/25/2023 | 7/24/2023 | 7/25/2023 | ACH | G- | 165.59 | 155.59 | 0.00 | 0.00 | 34,461.78 |
| 2179 | 7/25/2023 | 7/24/2023 | 7/25/2023 | ACH | G- | 165.59 | 10.00 | 0.00 | 0.00 | 34,451.78 |



THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian



EXHIBIT
4

## Business Loan and Security Agreement

**Loan Date** (inserted by Lender upon funding):    06/08/2022          **Agreement #:**    ▮81-1M

### I. Borrower Information

**Borrower Name:**  JT & Son Construction, LLC

**Business Address:**  131 POWELL RD NEW BRIGHTON PA, 15066

### II. Payment Information

| | |
|---|---|
| **Loan Amount:** | $100,000.00 |
| **Loan Payment (Monthly):** | $8,533.33 |
| **Payment Frequency:** | Monthly |
| **Number of Loan Payments:** | 15 |
| **Origination Fee (Included in Loan Amount):** | $2,500.00 |
| **Total Loan Payments:** | $127,999.95 |

*All Loan Payments will be drafted by ACH each month beginning on the first business day 15 days after the Loan Amount is disbursed ("**Funding Date**"). Any remaining balance and all other amounts payable hereunder are due on the Maturity Date. "Business Day" means any Monday through Friday, except Federal Reserve holidays. The term of this Loan begins on the Loan Date. Borrower hereby directs Lender to pay the Origination Fee from the Loan Amount.

### III. Borrower Information for Monthly ACH Loan Payments

| | |
|---|---|
| **Bank Institution Name:** | WESBANCO |
| **Borrower Account #:** | ▮1624 |
| **Routing #:** | ▮0036 |

**Please upload a voided check (Optional):**



BORROWER AUTHORIZES LENDER TO WITHDRAW BY ACH ALL LOAN PAYMENTS AND OTHER SUMS DUE HEREUNDER FROM THE ABOVE ACCOUNT. BORROWER REPRESENTS, WARRANTS AND AGREES THAT THIS ACCOUNT IS NOT AND WILL NOT BE USED FOR PERSONAL, FAMILY, HOUSEHOLD, RESIDENTIAL OR AGRICULTURAL PURPOSES BUT ONLY FOR BORROWER'S BUSINESS.

### TERMS AND CONDITIONS

**1. LOAN. "Loan Agreement"** means this Business Loan and Security Agreement. **"Loan"** means any loan, advance, forbearance, or extension of credit made by Lender hereunder. **"Lender"** means **Channel Partners Capital, LLC** and its successors and assignees. **"Borrower"** means the Borrower named above. Borrower promises to pay Lender the Total Loan Payments as set forth in Section II, together with any other fees, charges or amounts described herein, less any applicable prepayment discount contained in Section 4 below. Borrower agrees to remit to Lender by ACH from the bank account shown above the Loan Payments set forth above and all other sums when due and payable. Borrower may request a modification of the due date of the monthly payment and the Lender in its sole discretion will determine whether to (i) grant the Borrower's request and (ii) charge a fee for the due date modification. Borrower agrees to notify Lender in writing BEFORE Borrower closes that bank account or opens a new primary deposit or checking account for payment authority. BORROWER'S OBLIGATION TO REMIT PAYMENTS TO LENDER UNDER THIS LOAN AGREEMENT IS ABSOLUTE AND UNCONDITIONAL AND SHALL NOT BE SUBJECT TO SET-OFF, ABATEMENT, SUSPENSION, DEFERMENT, REDUCTION, CLAIM, COUNTERCLAIM OR DEFENSES OF ANY NATURE WHATSOEVER.

THIS IS A COPY
This is a Copy view of the Authoritative Copy held
by the designated custodian

**2. OTHER CHARGES; LATE PAYMENT; FEES.** Borrower agrees to file for, pay promptly, and indemnify and hold harmless Lender against all fees, assessments and taxes, contract rights, penalties and interest against its business and property. Borrower agrees to pay and indemnify and hold harmless Lender against all other expenses, losses, claims and attorneys' fees and costs arising out of Borrower's business or this Loan Agreement. Lender may take on Borrower's behalf any action required under this Loan Agreement which Borrower fails to take and upon receipt of Lender's invoice Borrower will pay all costs incurred by Lender in such action, plus reasonable processing fees. BORROWER AGREES TO PAY A LATE CHARGE EQUAL TO 15% OF THE MONTHLY LOAN PAYMENT IF THE PAYMENT IS NOT PAID WITHIN FIVE (5) DAYS OF DUE DATE (NOT TO EXCEED THE LOWER OF 15% OF THE LOAN AMOUNT OR THE MAXIMUM AMOUNT PERMITTED BY LAW). LENDER MAY CHARGE $25.00 FOR ANY ACH PAYMENT REFUSED BY BORROWER'S BANK FOR ANY REASON (NOT TO EXCEED THE MAXIMUM AMOUNT PERMITTED BY LAW). The Origination Fee shown on Page 1 includes the cost of processing Borrower's application and credit information and other expenses but it and other fees hereunder may not reflect the actual amount expended and may include a profit to Lender. Borrower agrees that it will pay to Lender all reasonable attorneys' fees and all court costs and other expenses incurred in collecting upon amounts due under this Loan Agreement or otherwise enforcing the terms of this Loan Agreement upon demand and whether or not suit is or has been filed.

**3. SECURITY INTEREST; AGREEMENTS.** As security for the payment of any of Borrower's obligations and liabilities to Lender of any nature whatsoever, direct or indirect, absolute or contingent, now existing or hereafter contracted or acquired, to Lender pursuant to this Loan Agreement and any renewals, extensions and modifications hereof, Borrower hereby gives, grants and assigns to Lender a continuing security interest in all of Borrower's personal property assets including, but not limited to, business equipment, inventory, accounts, accounts receivable, intellectual property, chattel paper, instruments, deposit accounts, commercial tort claims, contract rights, licenses, claims, general intangibles and any other assets and properties of any kind whatsoever, whether now owned or hereafter acquired, wherever located, together with all proceeds including insurance proceeds (the **"Collateral"**). Borrower will keep the Collateral in its possession at the address shown above, maintain the tangible Collateral in good working order and replace any Collateral lost or destroyed, and give Lender reasonable access to inspect the Collateral and any and all of Borrower's books and records. Borrower agrees, at its cost, to: (a) keep the Collateral insured against all risks of physical loss or damage for its full replacement value, (b) maintain public liability insurance in amounts and with carriers consistent with prudent business practice, and (c) upon Lender's request, provide satisfactory evidence of such insurance. Borrower authorizes Lender to prepare and file, electronically or otherwise, one or more financing statements and any amendment thereto or continuation or assignment thereof relating to the Collateral, describing the Collateral as all assets and containing any other information required by the applicable Uniform Commercial Code (the "UCC"). Borrower will not, without Lender's prior written consent, incur any debt other than in the ordinary course of business, change its name, change its state or type of business organization, merge, consolidate or otherwise combine with any business entity or sell more than one quarter of the ownership or assets of Borrower. Borrower agrees that Lender has not furnished Borrower any business or other advice or made any representations, warranties or agreements not stated in this Loan Agreement.

**4. PREPAYMENT.** BORROWER AGREES THAT LOANS MAY NOT BE PREPAID EXCEPT AS FOLLOWS: Provided the borrower is not in default hereunder, borrower, from the Borrower Account listed in Section III above, may prepay the Business Loan Agreement in full per the schedule below as determined by the Lender's records along with any fees or other amounts due hereunder.

For Prepayments made prior to 3 months after the Loan Date: **$112,000.00 minus Loan Payments made to date.**

For Prepayments made between 3 and 6 months after the Loan Date: **$117,000.00 minus Loan Payments made to date.**

For Prepayments made more than 6 months after the Loan Date: **5% discount on remaining payments.**

**5. DEFAULT & REMEDIES.** Borrower agrees that it will be in default under this Loan Agreement (a "Default") if: (a) Lender is unable to collect monthly Loan Payments and Borrower fails to deliver said Loan Payments to Lender in immediately-available funds within five (5) days from when monthly Loan Payment was due; (b) Borrower breaches any other obligation under this Loan Agreement or is guilty of any misrepresentation to Lender at any time, including in any credit application; (c) a petition is filed by or against Borrower or any guarantor under any bankruptcy or insolvency law; or (d) there exists an Adverse Change. As used herein, "Adverse Change" means: (i) a negative change in (A) Borrower's or any Guarantor's financial condition from the condition existing prior to such change or on the Loan Date, or (B) the properties, assets, business, operations or prospects of such person, which in either event Lender reasonably believes might materially and adversely affect Borrower's or such Guarantor's ability to perform Borrower's or its obligations under this Loan Agreement; or (ii) a default by Borrower or any Guarantor under any loan or other agreement with a bank or financial institution. Upon the occurrence of a Default, Lender may, in its sole discretion, exercise all rights and remedies available to Lender under the law or at equity, including the UCC. Additionally, Lender may declare all Loan Payments along with any other amounts due hereunder, immediately due and payable less five percent (5%) of the remaining unpaid payments as determined by the Lender's records. The obligations and liabilities accelerated thereby shall bear interest at the lower of eighteen percent (18%) per annum or the maximum rate allowed by applicable law. Borrower shall be liable for any deficiency in case of sale of Collateral if repossessed by Lender. All such remedies are cumulative and, to the extent permitted by law, may be exercised concurrently or separately. Failure by Lender to exercise any option under this Loan Agreement will not constitute a waiver of the right to exercise the same in the event of any subsequent default.

DocuSign Envelope ID: C73E-2D66-2952-3C1M-8685-61D4D92615C7    Case 23-21623-JCM    Doc 11-1    Filed 10/18/23    Entered 10/18/23 16:42:31    Desc

Exhibit A    Page 18 of 22

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

**6. ASSIGNMENT.** Borrower agrees that Borrower may not voluntarily or by operation of law delegate any of its obligations under this Loan Agreement but nothing in this sentence releases Borrower's heirs or successors. Lender may, without notifying Borrower, assign this Loan Agreement or any of Lender's rights hereunder and release information Lender has about Borrower, Guarantor and this Loan Agreement to any prospective investor, participant or purchaser of this Loan Agreement. If Lender does assign this Loan Agreement or any rights hereunder, Borrower agrees not to assert against Lender's assignee any claims Borrower may have against Lender.

**7. ENFORCEMENT OPTIONS.** Borrower agrees that any Loan may, at Lender's option, be enforced without first resorting to or exhausting any remedy Lender may have, including remedies against any of the Collateral.

**8. CREDIT REPORTING.** BORROWER AND GUARANTOR AUTHORIZE LENDER AND ANY CREDIT REPORTING AGENCY LENDER ENGAGES TO (1) INVESTIGATE REFERENCES AND INFORMATION OBTAINED FROM OR ABOUT BORROWER OR GUARANTOR FOR THE PURPOSE OF ANY LOAN, (2) OBTAIN BORROWER'S AND GUARANTOR'S BUSINESS AND PERSONAL CREDIT BUREAU REPORTS FROM TIME TO TIME, (3) report Borrower's and Guarantor's transaction and experiences with any Loan to credit bureaus and (4) release or use any credit information in connection with enforcement of Lender's rights hereunder. To the maximum extent permitted by law, Borrower and Guarantor waive any claim for damages relating to any such investigation or disclosure.

**9. INTEREST RATE.** ANYTHING HEREIN TO THE CONTRARY NOTWITHSTANDING: It is Lender's intention to comply strictly with applicable usury laws and not to receive, collect, or apply as interest any interest (including fees, charges or other payments deemed equivalent to interest under applicable law) in excess of the maximum rate of interest which Lender may lawfully charge under applicable law (the "Maximum Rate"). Accordingly, Lender has agreed and Borrower's obligations hereunder are limited by Lender's agreement that, in the event that Lender ever receives, collects, or charges any amount in excess of the Maximum Rate, such excess shall be applied to the reduction of the principal balance owed hereunder or if all principal and accrued lawful interest is paid in full, any remaining excess shall forthwith be paid to Borrower, or other party lawfully entitled thereto. Any provision hereof or of any other agreement between Borrower and Lender that operates to obligate or compel Borrower to pay interest in excess of the Maximum Rate shall be construed to require payment of the Maximum Rate only.

**10. COMMERCIAL TRANSACTION; USE OF LOAN.** THE LOAN MADE UNDER THIS LOAN AGREEMENT IS FOR BUSINESS PURPOSES ONLY and is not made for consumer, personal, family, household, residential or agricultural purposes. Borrower represents, warrants, and commits to Lender that Borrower will not use any of the amount loaned hereunder for consumer, personal, family, household, residential or agricultural purposes and Borrower will not distribute any of such amount as a dividend or other payment to shareholders, partners or owners of Borrower's business except salaries in the ordinary course.

**11. CONSENT TO MINNESOTA LAW, JURISDICTION, VENUE, AND WAIVER OF RIGHT TO JURY TRIAL.** THIS LOAN AGREEMENT SHALL BE GOVERNED BY, INTERPRETED, CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF MINNESOTA, WITHOUT REGARD TO THE CONFLICT-OF-LAWS PRINCIPLES THEREOF. FOR PURPOSES OF ANY ACTION OR PROCEEDING INVOLVING THIS LINE AGREEMENT, THE BORROWER HEREBY EXPRESSLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF ANY FEDERAL OR STATE COURT SELECTED BY THE LENDER LOCATED IN THE STATE OF MINNESOTA. THE BORROWER HERBY CONSENTS TO THE JURISIDICTION AND VENUE OF SUCH COURT AND IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW THE RIGHT TO TRIAL BY JURY AND THE DEFENSE OF AN INCONVENIENT FORUM TO THE MAINTENANCE OF ANY SUCH ACTION OR PROCEEDING.

**12. CLASS ACTION WAIVER.** BORROWER, LENDER, AND EACH GUARANTOR ACKNOWLEDGE AND AGREE THAT THE AMOUNT AT ISSUE IN THIS TRANSACTION AND ANY DISPUTES THAT ARISE BETWEEN THEM ARE LARGE ENOUGH TO JUSTIFY DISPUTE RESOLUTION ON AN INDIVIDUAL BASIS. EACH PARTY HERETO WAIVES ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION. ALL WAIVERS ARE MADE KNOWINGLY, VOLUNTARILY, AND WITHOUT DURESS.

**13. DISPUTE RESOLUTION.** The parties (including any Guarantors) agree to attempt to resolve all disputes arising out of or in connection with this Loan Agreement (including any questions regarding its existence, validity or termination) through discussions and negotiations between the respective party representatives and a mediator. If mediation does not resolve the dispute, then either party shall have the right to refer any such dispute to arbitration under the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). The arbitration shall be heard by a single arbitrator appointed by mutual agreement of the parties, if the parties are unable to agree, the arbitrator shall be appointed by the AAA who shall be a retired judge. The arbitration shall be conducted in Minneapolis, Minnesota unless the parties agree otherwise. The arbitrator may issue appropriate orders as well as a monetary award for compensatory damages. The arbitrator is not empowered to award damages in excess of compensatory damages or class action remedies and each party hereby irrevocably waives any damages in excess of compensatory damages. The parties shall continue to perform their respective obligations, including payment obligations, under the Loan Agreement during any consultation, mediation or arbitration proceeding in connection with such dispute. Notwithstanding any of the foregoing and without prejudice to the arbitration in accordance with this provision, the parties recognize in cases where time is of the essence, arbitration may not proceed with the speed required to protect the parties' interest. Therefore, either party may seek provisional remedies through the courts, including injunctive relief and replevin, pending final resolution of the dispute through arbitration.

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

**14. MISCELLANEOUS.** All of Borrower's representations, warranties, indemnities, obligations and agreements shall survive repayment of any or all Loans or termination of this Loan Agreement. This Loan Agreement shall be binding upon and shall inure to the benefit of Borrower's and Lender's heirs, personal representatives, successors and assigns. Neither this Loan Agreement nor any term or provision hereof may be changed, modified, waived, discharged or terminated orally or in any manner other than by an instrument in writing, signed by Lender; and any request or notice to Lender must be in writing and delivered to Lender's address on the first page. Borrower agrees to perform any further acts and execute and deliver any documents which may be necessary to carry out the provisions of this Loan Agreement. Borrower acknowledges that Lender drafted this Loan Agreement as a convenience to Borrower and it should not be construed against the draftsman under any theory of construction. Restrictive endorsements on any checks Borrower sends to Lender will not be binding. Whenever possible, each provision of this Loan Agreement shall be interpreted in such manner as to be effective and valid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of the Loan Agreement.

Borrower acknowledges and agrees that it has had full opportunity to review this Loan Agreement and Borrower has had access to counsel of its choice to the extent Borrower deems necessary in order to interpret the legal effect hereof. Lender is authorized to make corrections to Borrower's name or other information inserted on page one or in Borrower's signature block, below. Lender is authorized to file any UCC financing statement for all assets of the Borrower or any other recording necessary to preserve its security interest. This Loan Agreement and any applicable financing statement(s) and guarantee(s) contains Borrower's entire agreement regarding the transactions contemplated hereby and supersedes all prior negotiations or agreements with Lender regarding the extension of credit contemplated hereby. BORROWER MAY REQUEST A COPY OF THIS LOAN AGREEMENT IN LARGER TYPE FOR REVIEW PRIOR TO SIGNING. This Loan Agreement may be executed in two (2) or more counterparts all of which together shall constitute one and the same agreement. Counterparts may be delivered via facsimile, electronic mail (including .pdf or any electronic signature complying with US Federal ESIGN Act of 2000, e.g., www.docusign.com) or other transmission method and any counterpart so delivered shall be deemed to have been duly delivered and be valid and effective for all purposes.

Lender is executing only one counterpart of this Loan Agreement. The counterpart bearing both (i) the Lender's original signature and (ii) the original, facsimile or electronically-mailed signatures of Borrower and any Guarantors shall be deemed the sole original counterpart and authoritative copy for all purposes and shall be admissible evidence of the Loan.

**15. COMMUNICATIONS.** Borrower and Guarantor agree that by providing Lender with their contract information (such as, an email address or telephone number for a wireless device), either now or in the future, Borrower and Guarantor expressly consent to receiving communications including email, voice and text messages from Lender or Lender's Assignees, regardless of their purpose, including but not limited to marketing or collection purposes. This consent is not a condition of doing business with, or making a purchase of any goods/services from Lender. These calls and messages may be subject to charges from your internet or wireless provider. Borrower and Guarantor may unsubscribe or opt-out of any further telemarketing calls or marketing text messages at any time.

**16. PROHIBITED TRANSACTIONS.** So long as there is an outstanding balance on any Loan, Borrower will not directly or indirectly sell, assign or grant a security interest in, or otherwise authorize deductions or transfers from, any Borrower Account if such transaction requires or permits deductions or transfers from any Borrower Account more frequently than every 30 days, or over a period of 24 months or less. For purposes of the immediately-preceding sentence, "Borrower Account" means any (i) credit, debit, bank or other payment card receipts, (ii) customer payments, including those made by drafts, electronic funds transfers, or automated clearing house payments or (iii) accounts receivable, cash receipts, or deposit accounts owned by or payable to Borrower.

4

THIS IS A COPY
This is a Copy View of the Authoritative Copy held
by the designated custodian

**BORROWER: DO NOT SIGN THIS LOAN AGREEMENT UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS. BY SIGNING YOU CONFIRM THAT YOU HAVE IDENTIFIED TO LENDER ALL SHAREHOLDERS, OWNERS, PARTNERS AND MEMBERS OF YOUR BUSINESS.**

**Borrower Name:**  JT & Son Construction, LLC

**Signature:**    DocuSigned by:

B053DE26AC924A5...

**Title:**    Owner

**Date:**    6/8/2022  |  15:03:55 CDT

This Loan Agreement has been received and accepted by Lender in Minnesota after being signed by Borrower and any Guarantor(s) and is the **SOLE ORIGINAL COUNTERPART and AUTHORITATIVE COPY. Lender is executing only one counterpart of this Loan Agreement.**

**Channel Partners Capital, LLC**

**By:**    Jill Fleck

**Signature:**    DocuSigned by:    Jill Fleck

0EE54F2E3E79453...

**Title:**    VP of Administration

**Date:**    6/8/2022  |  15:38:12 CDT

COPY VIEW

DocuSign Envelope ID: C73E2D64-8952-4CA8-865D-81D4D3261 5C7

THIS IS A COPY
This is a Copy View of the Authoritative Copy held
by the designated custodian

# GUARANTY

Capitalized terms have the meanings assigned in the above Loan except as the context requires.

The undersigned guarantor(s), (each, if more than one, is herein called "Guarantor") will benefit from the loan by Lender to Borrower to be made under the above Loan Agreement, which Guarantor has read. Lender would not make the loan or accept the Loan Agreement without this Guaranty. Guarantor (and each of them jointly and severally if more than one) unconditionally guaranties the full and prompt payment and performance of all Borrower's obligations under the Loan even if Lender changes or renews the Loan Agreement, or if any payments made by Borrower are rescinded or voided due to Borrower's or any Guarantor's insolvency, bankruptcy or reorganization, as if the payment had not been made. Guarantor waives notice of default under the Loan Agreement. If Borrower defaults, Guarantor will immediately pay in accordance with the default provisions of the Loan Agreement all obligations due thereunder. Guarantor will not be released or discharged if Lender: (i) fails to perfect a security interest in any Collateral; (ii) fails to protect the Collateral; (iii) abandons or releases any Collateral; or (iv) releases any Collateral or any Guarantor. Guarantor agrees that Lender does not have to proceed first against Borrower, any Collateral or any other guarantor or other person, including any Guarantor signing below. Guarantor waives notice of acceptance of this Guaranty and of all other notices or demands and suretyship defenses of any kind. Guarantor will reimburse Lender for all expenses incurred in enforcing its rights against Borrower, or any Guarantor, including without limitation, attorneys' fees and costs. Guarantor has read Section 8 of the Loan Agreement. This is an irrevocable, continuing Guaranty of performance and not of collection and binds Guarantor's heirs, administrators and representatives. Guarantor agrees that this Guaranty will not terminate until Lender has been paid all amounts owing to Lender and Borrower has performed all of Borrower's obligations under the Loan Agreement. Guarantor agrees that in any action brought to enforce this Guaranty in which Lender is the prevailing party, Guarantor will pay to Lender all reasonable attorneys' fees, court costs, discovery costs and expenses incurred by Lender. THE PROVISIONS REGARDING JURISDICTION, VENUE AND SERVICE OF PROCESS CONTAINED IN THE LOAN AGREEMENT APPLY TO THIS GUARANTY. GUARANTOR WAIVES, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY. This Guaranty may be executed in two (2) or more counterparts but all of which together shall constitute one and the same agreement. Counterparts may be delivered via facsimile, electronic mail or other transmission method of any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes and admissible evidence of this Guaranty.

**GUARANTOR: DO NOT SIGN THIS GUARANTY UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND ALL OF THE TERMS OF THE LOAN.**

Guarantor: John Minark

Signature: ___DocuSigned by:___
B053DE26AC924A5...

Date: 6/8/2022 | 15:03:55 CDT

Please upload a driver's license (optional):



**Payment History**   **Date** **8/4/2023**

**JT & Son Construction, LLC**

| | |
|---|---|
| Original Principal Balance | $100,000.00 |
| Original Receivable Balance | $127,999.95 |
| Remaining Receivable Balance | $66,241.64 |
| Less any applicable discount | $3,314.58 |
| Subtotal: | $62,927.06 |
| Outstanding fees, if any | $ - |
| **Total Due:** | **$62,927.06** |

| Total Paid | Total Principal Paid | Total Interest Paid |
|---|---|---|
| 61,758.31 | 41,267.37 | 20,440.94 |

| Invoice # | Due Date | Invoice Date | Paid Date | Method | Reference | Amount Due | Amount Paid | Principal Paid | Interest Paid | Remaining Balance Due |
|---|---|---|---|---|---|---|---|---|---|---|
| 1598 | 6/24/2022 | 6/23/2022 | 6/24/2022 | ACH | G- | 8,533.33 | 8,533.33 | 6,703.51 | 1,829.82 | 119,466.62 |
| 7189 | 7/24/2022 | 7/24/2022 | 7/24/2022 | ACH | G- | 8,533.33 | 8,533.33 | 5,332.41 | 3,200.92 | 110,933.29 |
| 3393 | 8/24/2022 | 8/23/2022 | 8/24/2022 | ACH | G- | 8,533.33 | 8,533.33 | 5,414.76 | 3,118.57 | 102,399.96 |
| 4790 | 9/24/2022 | 9/25/2022 | 9/26/2022 | ACH | G- | 8,533.33 | 8,533.33 | 5,606.72 | 2,926.61 | 93,866.63 |
| 0600 | 10/24/2022 | 10/21/2022 | 10/24/2022 | ACH | G- | 8,533.33 | 8,533.33 | 5,893.49 | 2,639.84 | 85,333.30 |
| 5001 | 11/24/2022 | 11/24/2022 | 11/24/2022 | ACH | G- | 8,533.33 | 8,533.33 | 6,014.44 | 2,518.89 | 76,799.97 |
| 3299 | 12/24/2022 | 12/25/2022 | 12/26/2022 | ACH | G- | 8,533.33 | 8,533.33 | 6,302.04 | 2,231.29 | 68,266.64 |
| 8912 | 1/24/2023 | 1/23/2023 | 1/24/2023 | ACH | G- | 8,533.33 | 8,533.33 | 6,451.09 | 2,082.24 | 59,733.31 |
| 8912 | 1/24/2023 | 1/23/2023 | 1/24/2023 | ACH | G- | 8,533.33 | -8,533.33 | -6,451.09 | -2,082.24 | 68,266.64 |
| 8912 | 1/24/2023 | 1/23/2023 | 1/27/2023 | ACH | G- | 8,533.33 | 8,533.33 | 6,451.09 | 2,082.24 | 59,733.31 |
| 8912 | 1/24/2023 | 1/23/2023 | 1/27/2023 | ACH | G- | 8,533.33 | -8,533.33 | -6,451.09 | -2,082.24 | 68,266.64 |
| 2994 | 1/27/2023 | 1/26/2023 | 1/27/2023 | ACH | G- | 25.00 | 25.00 | 0.00 | 0.00 | 68,241.64 |
| 2994 | 1/27/2023 | 1/26/2023 | 1/27/2023 | ACH | G- | 25.00 | -25.00 | 0.00 | 0.00 | 68,266.64 |
| 8912 | 1/24/2023 | 1/23/2023 | 2/1/2023 | ACH | G- | 8,533.33 | 8,533.33 | 6,451.09 | 2,082.24 | 59,733.31 |
| 8912 | 1/24/2023 | 1/23/2023 | 2/1/2023 | ACH | G- | 8,533.33 | -8,533.33 | -6,451.09 | -2,082.24 | 68,266.64 |
| 2994 | 1/27/2023 | 1/26/2023 | 2/1/2023 | ACH | G- | 25.00 | 25.00 | 0.00 | 0.00 | 68,241.64 |
| 2994 | 1/27/2023 | 1/26/2023 | 2/1/2023 | ACH | G- | 25.00 | -25.00 | 0.00 | 0.00 | 68,266.64 |
| 8912 | 1/24/2023 | 1/23/2023 | 2/21/2023 | ACH | G- | 8,533.33 | 475.00 | 0.00 | 475.00 | 67,791.64 |
| 8912 | 1/24/2023 | 1/23/2023 | 2/21/2023 | ACH | G- | 8,533.33 | -475.00 | 0.00 | -475.00 | 68,266.64 |
| 2994 | 1/27/2023 | 1/26/2023 | 2/21/2023 | ACH | G- | 25.00 | 25.00 | 0.00 | 0.00 | 68,241.64 |
| 2994 | 1/27/2023 | 1/26/2023 | 2/21/2023 | ACH | G- | 25.00 | -25.00 | 0.00 | 0.00 | 68,266.64 |
| 8912 | 1/24/2023 | 1/23/2023 | 2/24/2023 | ACH | G- | 17,066.66 | 975.00 | 0.00 | 975.00 | 67,291.64 |
| 8912 | 1/24/2023 | 1/23/2023 | 2/24/2023 | ACH | G- | 8,533.33 | -500.00 | 0.00 | -500.00 | 67,791.64 |
| 2994 | 1/27/2023 | 1/26/2023 | 2/24/2023 | ACH | G- | 25.00 | 25.00 | 0.00 | 0.00 | 67,766.64 |
| 8912 | 1/24/2023 | 1/23/2023 | 3/24/2023 | ACH | G- | 8,533.33 | 500.00 | 0.00 | 500.00 | 67,266.64 |
| 8912 | 1/24/2023 | 1/23/2023 | 4/24/2023 | ACH | G- | 8,533.33 | 7,558.33 | 6,451.09 | 1,107.24 | 59,708.31 |
| 8912 | 1/24/2023 | 1/23/2023 | 4/24/2023 | ACH | G- | 8,533.33 | -7,558.33 | -6,451.09 | -1,107.24 | 67,266.64 |
| 9995 | 2/24/2023 | 2/23/2023 | 4/24/2023 | ACH | G- | 8,533.33 | 975.00 | 0.00 | 975.00 | 66,291.64 |
| 9995 | 2/24/2023 | 2/23/2023 | 4/24/2023 | ACH | G- | 8,533.33 | -975.00 | 0.00 | -975.00 | 67,266.64 |
| 8912 | 1/24/2023 | 1/23/2023 | 4/27/2023 | ACH | G- | 8,533.33 | 7,558.33 | 6,451.09 | 1,107.24 | 59,708.31 |
| 8912 | 1/24/2023 | 1/23/2023 | 4/27/2023 | ACH | G- | 8,533.33 | -7,558.33 | -6,451.09 | -1,107.24 | 67,266.64 |
| 9995 | 2/24/2023 | 2/23/2023 | 4/27/2023 | ACH | G- | 17,066.66 | 975.00 | 0.00 | 975.00 | 66,291.64 |
| 9995 | 2/24/2023 | 2/23/2023 | 4/27/2023 | ACH | G- | 8,533.33 | -950.00 | 0.00 | -950.00 | 67,241.64 |
| 5617 | 4/27/2023 | 4/26/2023 | 4/27/2023 | ACH | G- | 25.00 | 25.00 | 0.00 | 0.00 | 67,216.64 |
| 5617 | 4/27/2023 | 4/26/2023 | 4/27/2023 | ACH | G- | 25.00 | -25.00 | 0.00 | 0.00 | 67,241.64 |
| 8912 | 1/24/2023 | 1/23/2023 | 5/31/2023 | ACH | G- | 8,533.33 | 475.00 | 0.00 | 475.00 | 66,766.64 |
| 5617 | 4/27/2023 | 4/26/2023 | 5/31/2023 | ACH | G- | 25.00 | 25.00 | 0.00 | 0.00 | 66,741.64 |
| 8912 | 1/24/2023 | 1/23/2023 | 6/26/2023 | ACH | G- | 8,533.33 | 500.00 | 0.00 | 500.00 | 66,241.64 |
| 8912 | 1/24/2023 | 1/23/2023 | 7/24/2023 | ACH | G- | 8,533.33 | 5,290.66 | 5,183.42 | 107.24 | 60,950.98 |
| 8912 | 1/24/2023 | 1/23/2023 | 7/24/2023 | ACH | G- | 8,533.33 | -5,290.66 | -5,183.42 | -107.24 | 66,241.64 |
| 8912 | 1/24/2023 | 1/23/2023 | 7/27/2023 | ACH | G- | 8,533.33 | 5,290.66 | 5,183.42 | 107.24 | 60,950.98 |
| 8912 | 1/24/2023 | 1/23/2023 | 7/27/2023 | ACH | G- | 8,533.33 | -5,290.66 | -5,183.42 | -107.24 | 66,241.64 |
| 5026 | 7/27/2023 | 7/26/2023 | 7/27/2023 | ACH | G- | 25.00 | 25.00 | 0.00 | 0.00 | 66,216.64 |
| 5026 | 7/27/2023 | 7/26/2023 | 7/27/2023 | ACH | G- | 25.00 | -25.00 | 0.00 | 0.00 | 66,241.64 |
| 8912 | 1/24/2023 | 1/23/2023 | 8/1/2023 | ACH | G- | 17,066.66 | 5,290.66 | 5,183.42 | 107.24 | 60,950.98 |
| 8912 | 1/24/2023 | 1/23/2023 | 8/1/2023 | ACH | G- | 17,066.66 | -5,290.66 | -5,183.42 | -107.24 | 66,241.64 |
| 5026 | 7/27/2023 | 7/26/2023 | 8/1/2023 | ACH | G- | | 25.00 | 0.00 | 0.00 | 66,216.64 |
| 5026 | 7/27/2023 | 7/26/2023 | 8/1/2023 | ACH | G- | 25.00 | -25.00 | 0.00 | 0.00 | 66,241.64 |